******************************************************

    The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

    All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

    The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TOWN OF CANTON *v.* CADLE PROPERTIES OF
CONNECTICUT, INC.
(AC 40484)

Keller, Prescott and Pellegrino, Js.

*Syllabus*

The plaintiff town filed a petition for the appointment of a receiver of rents,
alleging that the defendant had failed to pay real property taxes on
certain of its property. After the trial court granted that motion, the
intervening defendant, M Co., the current tenant of the subject property,
filed a motion to remove the receiver, claiming, inter alia, that the
receiver had exceeded its authority under statute (§ 12-163a) by serving
it with a notice to quit and by bringing an action to collect back taxes
and prior rents. M Co. appealed from the trial court's ruling denying its
motion, and, following a remand, the receiver filed an interim accounting
and moved the trial court to approve that accounting and its previous
disbursal of funds. M Co. objected on the ground that the accounting
submitted indicated that the receiver had failed to comply with the order
of priorities for distributions under § 12-163a, which requires the receiver
to pay the costs for utilities due on and after its appointment. The trial
court approved an updated interim accounting and overruled M Co.'s
objection, and M Co. appealed to this court. On appeal, M Co. claimed,
inter alia, that a plain reading of § 12-163a does not limit the required,
enumerated utility payments to those obligated to be paid by the owner
of the property and, thus, that the trial court should not have approved
the updated interim accounting because the receiver did not reimburse
M Co. for its utility expenditures. *Held* that the trial court properly
determined that, pursuant to § 12-163a, the receiver is mandated to pay
only utility bills that are the obligation of the owner, not those incurred
by tenants of the property: a literal adherence to the text of § 12-163a
was unworkable in the present circumstances because an interpretation
of the statute that relieves tenants of an obligation to pay for their own
utility expenses and places the burden on the receiver appointed under
§ 12-163a will likely lead to considerably less money to satisfy delinquent
taxes and, where necessary, the fees and costs of the receiver, thereby
defeating the primary purpose of the receivership; moreover, where, as
here, the plain meaning of the statutory text yields an unworkable result,
courts may look for interpretive guidance to extratextual evidence,
including the legislative history of § 12-163a, which indicated that it was
enacted in order to give municipalities the same tools and authority to
collect delinquent taxes that the legislature gave to utility companies
pursuant to statute (§ 16-262f), and, thus, because, under § 16-262f, the
legislature did not intend that a receiver acting on behalf of a utility
pay utility expenses for which the owner had not been directly billed,
it could be inferred that, in enacting § 12-163a, the legislature did not
intend that a receiver acting on behalf of a municipality seeking delin-
quent taxes owed by the owner bore the burden of providing all of
the occupants of the property with free utilities when, prior to the
appointment of the receiver, those occupants had been paying their
own utility bills; furthermore, common sense dictated that a statutory
procedure designed to assist financially pressed municipalities with
recoupment of delinquent taxes from property owners should not have
its effectiveness diminished by an impractical interpretation that would
give tenants the unexpected gift of free utilities by making a receiver
responsible, not just for the owner's unpaid utility bills, but also for
payment of each and every tenant's utility bills, and M Co.'s interpretation
of § 12-163a was further undermined by the fact that, in certain instances,
it would jeopardize the receiver's ability to continue to collect any rental
income at subject properties.

Argued November 13, 2018—officially released February 26, 2019

*Procedural History*

Petition for the appointment of a receiver of rents,

brought to the Superior Court in the judicial district of Hartford and tried to the court, *Graham, J.*; judgment granting the petition and appointing Boardwalk Realty Associates, LLC, as receiver of rents; thereafter, the court granted the receiver's motion to modify the order of appointment and granted the motion to intervene as a party defendant filed by M & S Associates, LLC; subsequently, the court denied the intervening defendant's motion to remove the receiver, and the intervening defendant appealed to this court, which reversed in part the trial court's judgment and remanded the case with direction to deny the receiver's motion to modify the receivership orders, and the plaintiff, on the granting of certification, appealed to the Supreme Court, which reversed this court's judgment in part and remanded the case to this court with direction to affirm the judgment of the trial court granting the receiver's motion for modification allowing the collection of back rent allegedly due; thereafter, the court, *Scholl, J.*, granted the receiver's motion to approve its interim accounting report and to disburse funds, and the intervening defendant appealed to this court. *Affirmed.*

*Eric H. Rothauser*, for the appellant (intervening defendant).

*Logan A. Carducci*, with whom were *Daniel J. Krisch* and, on the brief, *Kenneth R. Slater, Jr.*, for the appellee (plaintiff).

*Opinion*

KELLER, J. On April 26, 2011, the plaintiff, the town of Canton (town), filed a petition for an appointment of a receiver of rents after the named defendant, Cadle Properties of Connecticut, Inc. (Cadle), failed to pay property taxes on real property it owns at 51 Albany Turnpike in Canton. The court granted the petition on June 20, 2011. In this appeal, the intervening defendant, M & S Associates, LLC, which currently occupies the subject property, appeals from the trial court's post-judgment order approving an interim accounting filed by the receiver of rents, Boardwalk Realty Associates, LLC (receiver).[1] The defendant claims that the trial court erred in granting the receiver's motion for approval of the interim accounting by misconstruing General Statutes § 12-163a[2] and finding that the receiver is not required to pay, from the date of the receiver's appointment, the defendant's utility costs at the subject property. We disagree.

In a prior appeal, our Supreme Court set forth the following undisputed facts and procedural history, all of which are relevant to the present appeal:[3] "[Cadle] . . . is the owner of real property in Canton . . . . After Cadle effectively abandoned the property, which is . . . environmentally contaminated[4] . . . the town . . . filed a petition seeking the appointment of a receiver of rents pursuant to § 12-163a. The petition alleged that Cadle had failed to pay real property taxes due to the town in the amount of $362,788.59, plus interest and lien penalties, for a total amount due of $884,263.04.[5] The petition further alleged that, during all relevant periods, the property was occupied by a Volkswagen dealership owned by [the defendant], which had a legal obligation to pay rent to Cadle. The court, having found that Cadle owed the town taxes . . . granted the petition to appoint the receiver, and issued orders authorizing the receiver to collect all rents or use and occupancy payments due with respect to the property.

"After the receiver served the [defendant] with a notice to quit possession of the property on the ground of nonpayment of rent, the [defendant] filed a motion to intervene in the town's action against Cadle in order to challenge the receiver's authority to take legal action against it. Shortly thereafter, the receiver filed a motion to modify the receivership order to authorize it to pursue an eviction of the [defendant] in the event of nonpayment of rent, to lease the property to a new tenant, and to use all legal process to collect back rent. Prior to acting on the [defendant's] pending motion to intervene, the court granted the receiver's motion to modify without objection.

"Subsequently, the trial court granted the [defendant's] motion to intervene in the action. The [defen-

dant] then filed a motion to remove the receiver, asserting, inter alia, that the receiver had exceeded its authority under § 12-163a by serving it with a notice to quit and by bringing an action to collect back taxes and prior rents. The court denied the motion for removal . . . ." (Footnotes added and omitted.) *Canton* v. *Cadle Properties of Connecticut, Inc.*, 316 Conn. 851, 854–55, 114 A.3d 1191 (2015). The defendant appealed from the court's denial of its motion for removal. As noted previously, the defendant, in part, prevailed in its appeal because our Supreme Court ruled that the receiver only had authority under the statute "to use legal process to collect past due rent . . . ." Id., 862. The case was remanded to this court with direction to affirm the trial court's judgment with respect to its conclusion that the receiver has the authority to use legal process to collect past due rent. Id., 853, 863.

On March 3, 2017, the receiver filed an interim accounting, and moved the trial court to approve said accounting and its previous disbursal of funds. In relevant part, the defendant objected on the ground that the accounting submitted indicated that the receiver had failed to comply with the order of priorities for distributions under § 12-163a, in that "[t]here is no indication in the accounting of any payments being applied to utilities supplied after the date of the receiver's appointment."[6]

On April 24 and May 15, 2017, the court held a hearing on both the receiver's motion to approve its interim accounting and the defendant's objection to it. During the April 24, 2017 hearing, the court requested that the receiver file a more detailed accounting of the fees and expenses that it claimed. The receiver complied by filing an updated accounting on May 12, 2017. The defendant argued to the court that § 12-163a (a) requires the receiver to pay the costs for utilities due on and after its appointment, notwithstanding the fact that the expired lease agreement between the defendant and Cadle had provided that the defendant would pay for the cost of its utilities or, in continuing to operate its automobile dealership, the defendant had been paying the utilities supplying service to the dealership after the lease expired. The defendant pointed to the language of § 12-163a, arguing that the statute clearly did not distinguish between the owner's and the tenants' utility obligations. Accordingly, the defendant asserted that it was the obligation of the receiver to reimburse it for approximately $25,000 that it had expended for utilities provided to the property since the date of the receiver's appointment.

The receiver responded that the defendant's interpretation of the statute was "tortured," and that it would permit the defendant to "continue to squat on the property and have its utilities reimbursed from a nonexistent rent stream back into its pocket."[7] The receiver further asserted that the intent of the statute was to pay utility

bills owed to the enumerated utilities by the owner/ landlord but not those owed by the tenants. It declared that the defendant's interpretation was "absurd" because it would result in unjustly rewarding a non-rent-paying "squatter" that had continued to operate its business on the property and utilized utilities only for its own business functions. The receiver, as of the date of the hearing, was collecting no rental payments and had collected, since 2011, only a small amount of rent, resulting in a little less than $50,000 being remitted to the town for its taxes.

In an oral decision, the trial court approved the updated interim accounting and overruled the defendant's objection, concluding that § 12-163a only requires the receiver to pay those utility costs "for the common areas or the areas that are the responsibility of the owner . . . ." The court concluded there was no authority that required the receiver to reimburse tenants for utility costs that they were already obligated to pay.[8] This appeal followed.

Whether § 12-163a mandates that a receiver pay utility bills incurred by a tenant or former tenant occupying the property in question is an issue "of statutory construction subject to plenary review and well established principles." *Canton* v. *Cadle Properties of Connecticut, Inc.*, supra, 316 Conn. 856. General Statutes § 1-2z instructs that "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." See *Rainforest Cafe, Inc.* v. *Dept. of Revenue Services*, 293 Conn. 363, 372–81, 977 A.2d 650 (2009) (engaging in statutory analysis pursuant to § 1-2z).

Section 12-163a (a) mandates that a receiver of rents is to distribute funds collected from rental or use and occupancy payments in the following order of priority: (1) payment for taxes due on and after the date of its appointment; (2) payment for electric, gas, telephone, water or heating oil supplied on and after such date; (3) reasonable fees and costs determined by the court to be due the receiver; (4) reasonable attorney's fees and costs incurred by the petitioner; (5) delinquent taxes; and (6) amounts to such interested parties as the court may direct. See General Statutes § 12-163a (a).

The defendant claims that the court should not have approved the interim accounting because the receiver did not reimburse the defendant for its utility expenditures on behalf of its automobile dealership, which continues to operate on the property. It argues that a plain reading of the statute does not limit the required, enumerated utility payments to those obligated to be paid

by the owner of the property, and that courts cannot add to and modify statutory language because they believe the legislature made drafting errors. The defendant notes that receivership statutes like § 12-163a, which are sui generis, are to be strictly construed, as they are in derogation of the common law. See *Connecticut Light & Power Co.* v. *DaSilva*, 231 Conn. 441, 446, 650 A.2d 551 (1994) (in light of language, purpose and sui generis nature of General Statutes § 16-262f, trial court mistaken in assumption that appointment of rent receiver for protection of utility governed by wide-ranging equitable and discretionary principles of ordinary mortgage foreclosure proceedings); *Southern Connecticut Gas Co.* v. *Housing Authority*, 191 Conn. 514, 518–20, 468 A.2d 574 (1983) (utility rent receivership under § 16-262f is special statutory proceeding, not civil action, and proceeding is sui generis); *Canton* v. *Cadle Properties of Connecticut, Inc.*, 145 Conn. App. 438, 451, 77 A.3d 144 (2013) (§ 12-163a, like § 16-262f, is sui generis in derogation of common law), rev'd on other grounds, 316 Conn. 851, 114 A.3d 1191 (2015).

The town argues that the defendant's construction of § 12-163a yields an absurd or unworkable result. It argues that, if receivers must prioritize the tenant's utility bills in addition to the owner's outstanding utility obligations, tenants who, prior to the date of receivership, were responsible for their own utility bills will continue to occupy the property without being obligated to pay their utility bills. The town further argues that this absurd and unworkable result is particularly evident in the present case, in which the defendant already is occupying the property rent free and operating a business for profit. The town maintains that it defies common sense to conclude that the legislature created statutory rent receiverships for the purpose of relieving tenants of their prior obligation to pay their own utility expenses. After all, the town asserts, the statute exists to provide relief to municipalities by ameliorating an owner's delinquency for property taxes and, therefore, construing the language in a way that furthers this purpose is sensible.

We agree with the town that the facially plain and unambiguous language of the disputed portion of § 12-163a, which provides in relevant part that "[t]he receiver shall make payments from such rents or payments for use and occupancy . . . for electric, gas, telephone, water or heating oil supplied on and after [the date of its appointment]," leads to an unworkable result. This is because the plain statutory language appears to encompass not only the enumerated utilities the owner or landlord previously was obligated to pay at the time of the receiver's appointment, but all of the enumerated utilities serving the property, including those utilities that the tenants or other occupants of the property previously were obligated to pay.

A literal adherence to the text of the statute is unworkable in the present circumstances. An interpretation of the statute that relieves tenants of an obligation to pay for their own utility expenses and places the burden on the receiver appointed under § 12-163a will likely lead to considerably less money to satisfy the amount owed in unpaid property taxes and, where necessary, the fees and costs of the receiver, thereby defeating the primary purpose of the receivership. In addition, such an interpretation could create a situation where there may be insufficient funds collected by the receiver to commence paying all of the tenants' utility bills if the rents payable prior to the appointment of the receiver were never calculated to include payment for utilities provided to each and every rental unit. Such a scenario would create problems even for previously responsible tenants.

Because we have determined that the plain meaning of the statutory text yields an unworkable result, we may look for interpretive guidance to extratextual evidence, such as the legislative history and circumstances surrounding the enactment of § 12-163a, to the legislative policy it was designed to implement, and to its relationship to existing legislation. "[U]nder § 1-2z, we are free to examine extratextual evidence of the meaning of a statute, including its legislative history, when application of the statute's plain and unambiguous language leads to an unworkable result. See General Statutes § 1-2z." (Footnote omitted.) *Rivers* v. *New Britain*, 288 Conn. 1, 18–19, 950 A.2d 1247 (2008).

Our Supreme Court's statutory analysis in *Rivers* is particularly instructive in the present case. In *Rivers*, our Supreme Court observed that our legislature has not defined the word "unworkable" as it is used in § 1-2z. Id., 17. In defining that term, our Supreme Court looked to the dictionary definition of "unworkable," and relied on the fact that "[t]he American Heritage Dictionary defines 'unworkable' as 'not capable of being put into practice successfully.' American Heritage Dictionary of the English Language (3d Ed. 1992)." (Footnote omitted.) *Rivers* v. *New Britain*, supra, 17–18.

The issue in *Rivers* was whether General Statutes § 7-163a, which was enacted to relieve municipalities of the responsibility to remove snow and ice on municipal sidewalks by permitting municipalities to adopt an ordinance that shifts that responsibility to "the owner or person in possession and control of land abutting a public sidewalk"; General Statutes § 7-163a (c) (1); should be interpreted such that it relieved municipalities that have passed such an ordinance from liability in situations in which the abutting landowner is the state. *Rivers* v. *New Britain*, supra, 288 Conn. 3. Our Supreme Court observed that, in enacting § 7-163a, the legislature did not waive the state's sovereign immunity from liability or suit, and that "§ 7-163a imposes no

duty or liability on the state with respect to municipal sidewalks that abut state property." Id., 9. The court, mindful of the obvious public safety ramifications of its interpretation of the statute, concluded that "although the language of § 7-163a is facially plain and unambiguous, its application yields an unworkable result when, as in the present case, the state is the abutting landowner because, under that factual scenario, neither the municipality nor the state has a duty to clear the sidewalk of ice and snow." Id.

Accordingly, our Supreme Court, after reviewing the legislative history of § 7-163a, exempted the state from the liability imposed by the facially plain and unambiguous statutory language in § 7-163a that allowed the city to shift responsibility to abutting landowners. Id., 12, 22–23. Our Supreme Court concluded that when the legislature referred to such owner or person in possession and control of the abutting land, it meant to permit the municipality to shift responsibility only to *private* abutting property owners or persons in possession and control. Id., 21–23.

In enacting § 12-163a, the legislature intended to assist municipalities in collecting delinquent taxes through rent receivers. The legislature also sought to give municipalities the same tools and authority to collect delinquent taxes that it gave to utility companies pursuant to § 16-262f. Because § 12-163a is modeled after § 16-262f, an examination of § 16-262f sheds light on the proper interpretation of § 12-163a.

Section 16-262f concerns petitions for receivership of rents and common expenses by electric distribution, gas and telephone companies. That statute states in relevant part: "(a) (1) Upon the default of the owner . . . of a residential dwelling who is *billed directly* by an electric distribution, gas or telephone company or by a municipal utility for electric or gas utility service furnished to such building, such company or municipal utility or electric supplier . . . may petition the Superior Court or a judge thereof, for appointment of a receiver of the rents or payments for use and occupancy or common expenses, as defined in section 47-202, for any dwelling for which the owner . . . is in default. . . ." (Emphasis added.) Section 16-262f is intended to address the owner's delinquencies with respect to utilities if the owner is directly billed for such expenses. It does not contemplate that once a receiver is appointed to collect rent or use and occupancy or common expenses normally paid to the owner, that the receiver also must pay the cost of utilities that, prior to its appointment, had been billed to the occupants of the subject premises because the owner had not defaulted on any obligation in connection with the occupants' personal utility bills. Our Supreme Court observed that the purpose of § 16-262f was to permit "public service companies to petition for a statutory

rent receivership under limited circumstances that are statutorily linked to the [General Statutes] § 16-262e (a) prohibition on the termination of utility services. Under § 16-262e (a), a service may not be terminated: (1) to a residential dwelling; (2) despite nonpayment of a delinquent account; (3) for service billed directly to the residential building's . . . owner . . . and (4) when it is impracticable for occupants of the building to receive service in their own name. Unable to terminate service to such a residential dwelling, public service companies are expressly instructed, by § 16-262e (a), to pursue the remedy provided in [§] 16-262f." (Footnote omitted; internal quotation marks omitted.) *Southern Connecticut Gas Co.* v. *Housing Authority*, supra, 191 Conn. 518–19.

In 1995, when § 12-163a was enacted, Representative Robert D. Godfrey, the sponsor of House Bill No. 5331, stated: "You're hearing two bills of mine this morning . . . . What they have in common is they both enable municipalities to use tools that other entities already have at their disposal. . . . The second bill, 5331, which authorizes municipalities to petition for a receiver of rents for the collection of delinquent property taxes . . . gives municipalities the same kind of power as we currently give to utilities, which can petition for receivership of rent for back payment of electric, water, power, whatever." Conn. Joint Standing Committee Hearings, Planning and Development, Pt. 1, 1995 Sess., pp. 49–50. Because, under § 16-262f, the legislature did not intend that a receiver acting on behalf of a utility pay utility expenses for which the owner had not been directly billed, we may infer that, in enacting § 12-163a, the legislature did not intend that a receiver acting on behalf of a municipality seeking delinquent taxes owed by the owner bore the burden of providing all of the occupants of the property with free utilities when, prior to the appointment of the receiver, those occupants had been paying their own utility bills. To interpret § 12-163a in the manner the defendant proposes would undermine the stated legislative purpose of giving municipalities the "same kind of power" that § 16-262f gave to utilities. Such an interpretation would result in a costly and unworkable mechanism for municipalities to use in collecting delinquent property taxes.

Moreover, common sense dictates that a statutory procedure designed to assist financially pressed municipalities with recoupment of delinquent taxes from property owners should not have its effectiveness diminished by an impractical interpretation that would give tenants the unexpected gift of free utilities by making a receiver responsible, not just for the owner's unpaid utility bills, but also for payment of each and every tenant's utility bills. Such an unworkable result would, in many instances, significantly undermine the intent of the legislature to assist municipalities in col-

lecting taxes by reducing the amount of rent that could be applied by the receiver to payment of delinquent taxes and reimbursement for the fees and costs necessarily expended in filing the petition.

The defendant's interpretation of § 12-163a is further undermined by the fact that, in many instances, it would jeopardize the receiver's ability to continue to collect any rental income at subject properties. We may infer that the legislature, in requiring that the receiver distribute funds for utility payments *before* distributing other payments, including those for delinquent taxes, sought to ensure that the utilities at a subject property that are the responsibility of the owner would continue to be supplied to the property during the time in which a receiver is collecting rents or payments for use and occupancy. It is reasonable to assume that, if an owner fails to pay real property taxes because it is insolvent, it may be unable to pay for utilities at its rental property that are its responsibility, such as utilities that supply and benefit common areas that are not within the control of its tenants. It is not difficult to imagine a situation in which a lack of utilities in such common areas of a rental property would create problems for tenants and, thus, that the lack of utilities that would be supplied by an owner would jeopardize the property's continued ability to generate any rental income. Thus, although the legislature had a valid reason for ensuring that an owner's utility payments are satisfied by the receiver, such statutory purpose does not apply to the expenses incurred by tenants.

In light of the foregoing, we conclude that the trial court properly determined that, pursuant to § 12-163a, the receiver is mandated to pay only utility bills that are the obligation of the owner, not those incurred by tenants of the subject property.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Both the named defendant, Cadle, which did not appear in the trial court, and the receiver are not participating in this appeal. This appeal addresses only the claim of error raised by M & S Associates, LLC, relating to the trial court's approval of the receiver's accounting. In this opinion, we refer to M & S Associates, LLC, as the defendant.

[2] General Statutes § 12-163a provides in pertinent part: "(a) Any municipality may petition the Superior Court or a judge thereof, for appointment of a receiver of the rents or payments for use and occupancy for any property for which the owner, agent, lessor or manager is delinquent in the payment of real property taxes. The court or judge shall forthwith issue an order to show cause why a receiver should not be appointed, which shall be served upon the owner, agent, lessor, manager, mortgagees, assignees of rent and other parties with an interest in the rents or payments for use and occupancy of the property in a manner most reasonably calculated to give notice to such owner, lessor, manager, mortgagees, assignees of rent and other parties with an interest in the rents or payments for use and occupancy of the property as determined by such court or judge, including, but not limited to, a posting of such order on the premises in question. A hearing shall be had on such order no later than seventy-two hours after its issuance or the first court day thereafter. The sole purpose of such a hearing shall be to determine whether there is an amount due and owing between the owner, agent, lessor or manager and the municipality. The court shall make a

determination of any amount due and owing and any amount so determined shall constitute a lien upon the real property of such owner. A certificate of such amount may be recorded in the land records of the town in which such property is located describing the amount of the lien and the name of the party who owes the taxes. When the amount due and owing has been paid, the municipality shall issue a certificate discharging the lien and shall file the certificate in the land records of the town in which such lien was recorded. The receiver appointed by the court shall collect all rents or payments for use and occupancy forthcoming from the occupants of the building in question in place of the owner, agent, lessor or manager. The receiver shall make payments from such rents or payments for use and occupancy, first for taxes due on and after the date of his appointment and then for electric, gas, telephone, water or heating oil supplied on and after such date. The owner, agent, lessor or manager shall be liable for such reasonable fees and costs determined by the court to be due the receiver, which fees and costs may be recovered from the rents or payments for use and occupancy under the control of the receiver, provided no such fees or costs shall be recovered until after payment for current taxes, electric, gas, telephone and water service and heating oil deliveries has been made. The owner, agent, lessor or manager shall be liable to the petitioner for reasonable attorney's fees and costs incurred by the petitioner, provided no such fees or costs shall be recovered until after payment for current taxes, electric, gas, telephone and water service and heating oil deliveries has been made and after payments of reasonable fees and costs to the receiver. Any moneys remaining thereafter shall be used to pay the delinquent real property taxes and any money remaining thereafter shall be paid to such parties as the court may direct after notice to the parties with an interest in the rent or payment for use and occupancy of the property and after a hearing. The court may order an accounting to be made at such times as it determines to be just, reasonable and necessary. . . ."

[3] In the defendant's prior appeal, our Supreme Court considered the issue of whether § 12-163a authorizes a receiver (1) to evict a tenant from the property in the event of a default; (2) to lease the property to a new tenant; and (3) to use legal process to collect back rent allegedly due. *Canton* v. *Cadle Properties of Connecticut, Inc.*, 316 Conn. 851, 853, 114 A.3d 1191 (2015). Our Supreme Court concluded that the statute does authorize a receiver to use legal process to collect back rent allegedly due prior to the date of the receiver's appointment, but that neither the eviction of a tenant nor the leasing of the property to a new tenant fall within the scope of a receiver's authority. Id.

[4] On December 4, 2000, in a related case, the trial court, *Rubinow, J.*, ordered Cadle to comply with a pollution abatement order of the Department of Environmental Protection to address contaminated soil and groundwater and assessed a civil penalty in the amount of $2,143,000 against Cadle. *Holbrook* v. *Cadle Properties of Connecticut, Inc.*, Superior Court, judicial district of Hartford, Docket No. CV-97-0567429-S (December 4, 2000) (29 Conn. L. Rptr. 167).

[5] The petition was filed on April 26, 2011. On May 12, 2017, the town filed a report with the trial court indicating that the amount of real estate taxes due and owing for the period from June 23, 2011, the date the receiver was appointed, to April 25, 2017, including interest and lien fees, was $208,731.43.

[6] The receiver also initiated an action against the defendant in the Housing Session of the Superior Court for the judicial district of Hartford. The receiver sought damages for past due rent and/or use and occupancy; the defendant filed a counterclaim asserting that the receiver had failed to comply with the order of disbursements in § 12-163a, essentially raising the same issue presented in this appeal. Both parties moved for summary judgment as to liability on the receiver's complaint. On June 11, 2018, the court, *Miller, J.*, granted the defendant's motion for summary judgment, denied the receiver's motion and rendered judgment in favor of the defendant. The court did not rule on the defendant's counterclaim alleging improper disbursement. See *Boardwalk Realty Associates, LLC* v. *M & S Gateway Associates, LLC*, Superior Court, judicial district of Hartford, Housing Session, Docket No. CV-11-0008219-S (June 11, 2018). The receiver filed an appeal (AC 41831), which currently is pending in this court. According to the preliminary statement of issues, the receiver claims that the court improperly concluded that the receiver could not collect rent or use and occupancy from the defendant.

[7] The defendant conceded that after the appointment of the receiver, in response to the threat of eviction, it made, without prejudice, eight rental payments to the receiver totaling $64,000 between October, 2011, and April,

2012, but then ceased making rental payments after taking the position that it no longer owed rent to Cadle and, consequently, owed no rent to the receiver. The updated accounting indicates that the town had been paid $49,165 for back taxes and interest.

[8] The defendant has relied on the court's oral ruling of May 15, 2017. The record does not contain a signed transcript of the court's decision, as required by Practice Book § 64-1 (a), and the defendant did not file a motion pursuant to § 64-1 (b) providing notice that the court had not filed a signed transcript of its oral decision. Nor did the defendant take any additional steps to obtain a decision in compliance with § 64-1 (a). In some cases in which the requirements of § 64-1 (a) have not been followed, this court has declined to review the claims raised on appeal due to the lack of an adequate record. Despite the absence of a signed transcript of the court's oral decision or a written memorandum of decision, however, our ability to review the claims raised in the present appeal is not hampered because we are able to readily identify a sufficient, concise statement of the court's findings in the transcript of the proceedings. See *State* v. *Brunette*, 92 Conn. App. 440, 446, 886 A.2d 427 (2005), cert. denied, 277 Conn. 902, 891 A.2d 2 (2006). We note our concern, however, that the trial court's noncompliance with § 64-1 is a reoccurring issue in appeals involving oral decisions. See, e.g., *Emeritus Senior Living* v. *Lepore*, 183 Conn. App. 23, 25 n.2, 191 A.3d 212 (2018); *Nationstar Mortgage, LLC* v. *Mollo*, 180 Conn. App. 782, 789 n.7, 185 A.3d 643 (2018); *Rose B.* v. *Dawson*, 175 Conn. App. 800, 803–805, 169 A.3d 346 (2017); *Medeiros* v. *Medeiros*, 175 Conn. App. 174, 177 n.1, 167 A.3d 967 (2017); *State* v. *Chankar*, 173 Conn. App. 227, 234 n.7, 162 A.3d 756, cert. denied, 326 Conn. 914, 173 A.3d 390 (2017).

--------