******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# ROBERT P. IVES *v.* COMMISSIONER OF MOTOR VEHICLES
## (AC 41282)

Sheldon, Elgo and Lavery, Js.*

*Syllabus*

The plaintiff appealed to the trial court from a decision by the defendant commissioner of motor vehicles suspending the plaintiff's operator's license, pursuant to statute ([Rev. to 2015] § 14-227b), for a period of forty-five days and requiring the installation of an ignition interlock device in his motor vehicle for six months. The plaintiff claimed, inter alia, that the trial court erred in concluding that blood test results need not satisfy the conditions for admissibility and competence set forth by statute (§ 14-227a [k]) to be admissible in an administrative license suspension hearing. The plaintiff claimed that the trial court improperly interpreted a 2009 amendment to § 14-227b (j) as changing the requirements for the admissibility of chemical evidence at an administrative hearing, and that because he did not suffer and was not alleged to have suffered a physical injury in an accident as required by § 14-227a (k), his blood sample was improperly obtained. *Held*:

1. The trial court properly determined that the blood test derived from the plaintiff's blood sample satisfied the conditions for admissibility in the underlying administrative hearing before the defendant; although § 14-227b (j), which applies to administrative proceedings, and § 14-227a (k), which applies to criminal proceedings, plainly and unambiguously set forth certain factual preconditions that must be satisfied in order for those sections to be applicable to their respective proceedings, § 14-227b (j) sets forth an additional precondition not contained in the criminal statute, which was added by the 2009 amendment, that applies when a police officer otherwise determines that an operator of a motor vehicle requires treatment or observation at a hospital and which appears to create a conflict between the administrative statute and the criminal statute as to whether the blood test results derived from a blood sample taken from an operator may be admitted in a subsequent license suspension hearing when the operator has neither suffered, nor is alleged to have suffered a physical injury, and, thus, because the plain and unambiguous language of both statutes, when construed together, yields an unworkable result, it was necessary to look to the legislative history of the 2009 amendment for guidance, which demonstrated that its purpose was to extend the factual circumstances in which blood test results derived from blood samples are admissible in administrative proceedings under § 14-227b (j) to include accident situations where an operator of a motor vehicle, regardless of a physical injury or alleged physical injury, is determined by a police officer to require treatment or observation at a hospital; accordingly, the plaintiff's proposed reading of § 14-227b (j) to require either that an operator suffer or be alleged to have suffered a physical injury before his blood can be taken at a hospital would be inconsistent with the purpose underlying the 2009 amendment to § 14-227b (j) and render that section, as amended, inoperative, and construing § 14-227b (j) and § 14-227a (k) as being applicable to distinct factual circumstances was consistent with our case law discussing the legislative scheme underlying both statutes, and under the circumstances here, where the plaintiff was involved in an accident as a result of operating a motor vehicle while intoxicated and the police officer at the scene determined that the plaintiff, in light of his behavior following the accident, required either treatment or observation at a hospital, where a blood sample was taken for the purpose of diagnosing or treating him, the conditions for the admissibility of the blood test were satisfied.

2. The plaintiff's claim that permitting the introduction of the blood test results absent satisfaction of the admissibility conditions set forth in § 14-227a (k) was unconstitutional was not reviewable, the plaintiff having failed to raise that claim in the administrative hearing; moreover, the claim was not reviewable under *State* v. *Golding* (213 Conn. 233), the plaintiff having failed to raise a specific claim of constitutional defi-

ciency.

Argued February 13—officially released September 10, 2019

*Procedural History*

Appeal from the decision of the defendant suspending the plaintiff's license to operate a motor vehicle and requiring the installation of an ignition interlock device on the plaintiff's vehicle, brought to the Superior Court in the judicial district of New Britain and tried to the court, *Gleeson, J.*; judgment dismissing the appeal; thereafter, the court denied the plaintiff's motion to reargue or for reconsideration, and the plaintiff appealed to this court. *Affirmed.*

*Christopher Thompson*, with whom was *Gregory Thompson*, for the appellant (plaintiff).

*Christine Jean-Louis*, assistant attorney general, with whom, on the brief, was *George Jepson*, former attorney general, for the appellee (defendant).

*Opinion*

ELGO, J. The plaintiff, Robert P. Ives, appeals from the judgment of the trial court rendered in favor of the defendant, the Commissioner of Motor Vehicles (commissioner), dismissing his appeal from the decision of the commissioner to suspend his motor vehicle operator's license, pursuant to General Statutes (Rev. to 2015) § 14-227b,[1] for forty-five days and to require that he install and maintain an ignition interlock device in his motor vehicle for six months.[2] On appeal, the plaintiff claims that (1) the court erred in concluding that, in light of a 2009 amendment to § 14-227b (j), blood test results need not satisfy the conditions for admissibility and competence set forth in General Statutes § 14-227a (k) to be admissible in an administrative license suspension hearing, and (2) the introduction of blood test results derived from his blood sample without satisfying the admissibility conditions set forth in § 14-227a (k) is unconstitutional. We affirm the judgment of the trial court.

The following facts, as set forth in the trial court's order rendering a judgment of dismissal, and procedural history are relevant to our resolution of this appeal. "On April 4, 2016, at about 8:30 p.m., the Southington Police Department responded to a complaint about a motor vehicle in a ditch. The complainant had reported that the operator of the vehicle smelled of alcohol. Officer [Ryan] Lair found the plaintiff's vehicle off of the roadway in a ditch near a damaged guardrail. He observed the plaintiff to be unsteady on his feet and saw him fall to the ground, losing a sneaker in the process. The plaintiff did not replace his sneaker upon standing and gave Officer Lair a blank stare. As the plaintiff was having trouble standing up on his own, Officer Lair assisted the plaintiff so that he would not fall again. During their conversation, the plaintiff's speech was slurred and mumbling. Officer Lair observed that the plaintiff's eyes were glassy and bloodshot and he smelled the odor of alcohol on [the] plaintiff's breath. In plain view in [the] plaintiff's vehicle was an almost empty 375 [milliliter] Jägermeister bottle as well as several unopened [twelve ounce] beers. [The] [p]laintiff stated that 'he drank way too much tonight' and admitted to driving.

"[The] [p]laintiff's belligerence with the paramedics who arrived to examine him was witnessed by fire department personnel. The paramedics and fire personnel informed Officer Lair that the plaintiff 'appeared and smelled as if he was intoxicated.' [The] [p]laintiff was taken to a parking lot so that standard field sobriety tests could be administered by Lair and Officer [Jonathan] Lopa, but while there [the] plaintiff appeared to be dazed and continued to slur his speech and mumble. [The] [p]laintiff denied that he was a diabetic, but a blood sugar test administered by a paramedic resulted

in a 'borderline' number. [The] [p]laintiff at some point returned himself to the police cruiser and closed the door. When asked by Officer Lopa whether he had taken anything that night, [the] plaintiff became upset and agitated, exited the police cruiser, and physically assaulted Lopa. The officers then took the plaintiff down to the ground, which resulted in a small cut to [the] plaintiff's chin, as well as damage to the cruiser. As [the] plaintiff appeared to be incapacitated and blank faced, he was placed in the ambulance, whereupon he licked the female paramedic. [The] [p]laintiff was transported to Bradley Memorial Hospital for evaluation. Upon arrival, [the] plaintiff struck a male paramedic in the chest with his fist, after which both of his arms were handcuffed to his hospital bed. [The] [o]fficers learned that [the] plaintiff had struck both paramedics during the transport, one of whom had to sit on the plaintiff to control him. Hospital records indicate that [the] plaintiff was admitted because of [an] 'altered mental status,' and [the] plaintiff's violent and bizarre behavior continued while hospitalized. [The] [p]laintiff tried to bite a nurse technician, and repeatedly tried to bite his handcuffs off and to bite his IV line. [The] [p]laintiff intermittently displayed a confused affect, repeatedly swore at police and hospital staff, and made obscene suggestions and lascivious displays. Officer Lair was informed by Dr. Richard Steinmark that [the] plaintiff's blood would be drawn by medical staff in the course of their normal medical duties. [The] [p]laintiff's blood was so drawn and he was given medical treatment by hospital staff before being discharged.

"On April 28, 2016, Officer Lair sought and obtained a search and seizure warrant for [the] plaintiff's medical records, including toxicology results. Said toxicology results revealed a blood alcohol level that converted to 0.31, more than three times the legal limit. [The] [p]laintiff was arrested by warrant on May 27, 2016, for operating under the influence." Subsequently, the commissioner issued a notice advising the plaintiff of the proposed suspension of his license. On July 7, 2016, an administrative hearing was held at the Department of Motor Vehicles (department) to determine whether the plaintiff's license should be suspended pursuant to § 14-227b. At the hearing, Officer Lair testified to the contents of his police report detailing the events of the night of April 4, 2016. On the basis of the evidence presented at the hearing, the commissioner found that (1) Officer Lair had probable cause to arrest the plaintiff for operating a motor vehicle while under the influence of intoxicating liquor or drug or both, (2) the plaintiff was placed under arrest, (3) the plaintiff submitted to the test or analysis and the results indicated an elevated blood alcohol content, and (4) the plaintiff was operating the motor vehicle. Accordingly, the commissioner ordered the suspension of the plaintiff's license and required that an ignition interlock device be

installed and maintained in the plaintiff's vehicle.

On July 14, 2016, the plaintiff commenced an appeal of the commissioner's decision to the Superior Court. In his appeal, the plaintiff challenged the commissioner's findings that there was probable cause for his arrest for operating while under the influence and that he was operating a motor vehicle at that time. The plaintiff subsequently filed an amended complaint challenging the admissibility of the blood test results derived from the blood sample taken from him at the hospital under § 14-227b (j). On November 7, 2016, the defendant filed a request for remand and stay of appeal, in which he requested that the case be remanded to the department for further proceedings to determine whether the plaintiff's blood sample was obtained in accordance with the conditions for admissibility set forth in § 14-227a (k), pursuant to § 14-227b (j) (5). The court subsequently remanded the case to the department and retained jurisdiction pending the disposition of the case on remand. Among the facts supported by the evidence at the remand hearing and found by the commissioner to have been proven were that, in the opinion of Officer Lair, the plaintiff's postaccident behavior warranted further evaluation and treatment, and, thus, required that he be transported to the hospital for that purpose. After hearing arguments from the parties as to the admissibility of the blood test results derived from the plaintiff's blood sample, the commissioner again ordered the suspension of the plaintiff's license, concluding that Officer Lair's "actions in requiring [the plaintiff] to be in need of treatment or observation at the hospital [were] consistent" with the requirements set forth in § 14-227b (j), and that "the results of the blood sample were obtained by proper application for and issuance of a search and seizure warrant" pursuant to § 14-227a (k).

The plaintiff again appealed the commissioner's decision to the Superior Court, arguing that the blood test was inadmissible because the blood sample was not taken in accordance with § 14-227a (k), as required by § 14-227b (j) (5). Specifically, the plaintiff argued that "he had not suffered or allegedly suffered a physical injury in the accident, nor was the sample taken for the purpose of diagnosis or treatment of such an injury." The court rejected the plaintiff's argument, concluding that § 14-227a (k) governs the admissibility of chemical analyses of blood samples in criminal proceedings, "but is not applicable in the same way to administrative hearings" such as the one in the present case. The court then looked to the language of § 14-227b (j), which governs administrative proceedings, and concluded that "the language of § 14-227b (j) in question is plain and unambiguous," and that "there was substantial evidence in the record to support the [commissioner's] finding that [Officer Lair's] determination that the plaintiff's postaccident behavior necessitated further evaluation at a hospital was warranted." Accordingly, the

court affirmed the commissioner's decision and dismissed the plaintiff's appeal. This appeal followed.

I

The focus of the plaintiff's first claim on appeal is the trial court's purportedly erroneous interpretation of § 14-227b (j), the administrative statute, and its relation to § 14-227a (k), the criminal statute. The plaintiff claims that the court erred in interpreting the 2009 amendment to § 14-227b (j) as changing the requirements for the admissibility of chemical evidence at an administrative hearing. Notwithstanding that amendment, the plaintiff argues that because he did not suffer and was not alleged to have suffered a physical injury in an accident as required by § 14-227a (k), his blood sample was improperly obtained and, thus, any resulting blood test was inadmissible in the hearing before the department. In response, the commissioner argues that the references to suffering or allegedly suffering a physical injury in § 14-227a (k) are factual preconditions applicable to criminal proceedings and the admissibility of blood test results in those proceedings. As such, the commissioner contends that these preconditions do not apply to § 14-227b (j), which sets forth its own distinct preconditions for the admissibility of blood test results in administrative proceedings.

We begin by setting forth the appropriate standard of review. "[J]udicial review of the commissioner's action is governed by the Uniform Administrative Procedure Act [(UAPA), General Statutes §§ 4-166 through 4-189], and the scope of that review is very restricted. . . . [R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . .

"A reviewing court, however, is not required to defer to an improper application of the law. . . . It is the function of the courts to expound and apply governing principles of law. . . . We previously have recognized that the construction and interpretation of a statute is a question of law for the courts, where the administrative decision is not entitled to special deference . . . . Questions of law [invoke] a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Because this case forces us to examine a question of law, namely, [statutory] construction and interpretation

. . . our review is de novo. . . . We are also compelled to conduct a de novo review because the issue of statutory construction before this court has not yet been subjected to judicial scrutiny." (Citation omitted; internal quotation marks omitted.) *Jim's Auto Body* v. *Commissioner of Motor Vehicles*, 285 Conn. 794, 803–804, 942 A.2d 305 (2008).

"[W]hen construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning, General Statutes § 1–2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Footnote omitted; internal quotation marks omitted.) *Winsor* v. *Commissioner of Motor Vehicles*, 101 Conn. App. 674, 680–81, 922 A.2d 330 (2007).

"It also is well established that, [i]n cases in which more than one [statutory provision] is involved, we presume that the legislature intended [those provisions] to be read together to create a harmonious body of law . . . and we construe the [provisions], if possible, to avoid conflict between them." (Internal quotation marks omitted.) *State* v. *Victor O.*, 320 Conn. 239, 248–49, 128 A.3d 940 (2016); see also *Winsor* v. *Commissioner of Motor Vehicles*, supra, 101 Conn. App. 681 ("[T]he legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires [this court] to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." [Internal quotation marks omitted.]).

We begin our analysis by examining the relevant subsections of §§ 14-227b and 14-227a. Section 14-227b (a) provides in relevant part that "[a]ny person who operates a motor vehicle in this state shall be deemed to have given such person's consent to a chemical analysis of such person's blood, breath or urine . . . ." Section 14-227b (j) further provides in relevant part that "[n]otwithstanding the provisions of subsections (b) to (i),

inclusive, of this section, any police officer who obtains the results of a chemical analysis of a blood sample taken from or a urine sample provided by an operator of a motor vehicle who was involved in an accident and suffered or allegedly suffered physical injury in such accident, *or who was otherwise deemed by a police officer to require treatment or observation at a hospital*, shall notify the Commissioner of Motor Vehicles and submit to the commissioner a written report if such results indicate that such person had an elevated blood alcohol content, and if such person was arrested for violation of section 14-227a . . . . The commissioner may, after notice and an opportunity for hearing . . . suspend the motor vehicle operator's license . . . of such person for the appropriate period of time . . . and require such person to install and maintain an ignition interlock device for the appropriate period of time . . . . Each hearing conducted under this subsection shall be limited to a determination of the following issues: (1) [w]hether the police officer had probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or drug or both; (2) whether such person was placed under arrest; (3) whether such person was operating the motor vehicle; (4) whether the results of the analysis of the blood or urine of such person indicate that such person had an elevated blood alcohol content; and (5) *in the event that a blood sample was taken*, whether the blood sample was obtained in accordance with conditions for admissibility and competence as evidence as set forth in subsection (k) of section 14-227a." (Emphases added.)

Section §14-227a (k) provides in relevant part that "[n]otwithstanding the provisions of subsection (b) of this section, evidence respecting the amount of alcohol or drug in the blood or urine of an operator of a motor vehicle *involved in an accident who has suffered or allegedly suffered physical injury in such accident*, which evidence is derived from a chemical analysis of a blood sample taken from or a urine sample provided by such person after such accident at the scene of the accident, while en route to a hospital or at a hospital, shall be competent evidence to establish probable cause for the arrest by warrant of such person for a violation of subsection (a) of this section and *shall be admissible and competent in any subsequent prosecution thereof* if: (1) [t]he blood sample was taken or the urine sample was provided *for the diagnosis and treatment of such injury*; (2) if a blood sample was taken, the blood sample was taken in accordance with the regulations adopted under subsection (d) of this section; (3) a police officer has demonstrated to the satisfaction of a judge of the Superior Court that such officer has reason to believe that such person was operating a motor vehicle while under the influence of intoxicating liquor or drug or both and that the chemical analysis

of such blood or urine sample constitutes evidence of the commission of the offense of operating a motor vehicle while under the influence of intoxicating liquor or drug or both in violation of subsection (a) of this section; and (4) such judge has issued a search warrant in accordance with section 54-33a authorizing the seizure of the chemical analysis of such blood or urine sample. . . .'' (Emphases added.)

There is no ambiguity in the application of § 14-227b to administrative proceedings and § 14-227a to criminal proceedings. Moreover, both §§ 14-227b (j) and 14-227a (k) plainly and unambiguously set forth certain factual preconditions that must be satisfied in order for those sections to be applicable to their respective proceedings. Section 14-227b (j), however, sets forth an additional precondition not contained in the criminal statute that applies when a police officer otherwise determines that an operator of a motor vehicle requires treatment or observation at a hospital. This precondition, which was added by the 2009 amendment to § 14-227b, appears to create a conflict between the administrative statute and the criminal statute as to whether the blood test results derived from a blood sample taken from an operator may be admitted in a subsequent license suspension hearing when that operator has neither suffered, nor is alleged to have suffered, a physical injury. In light of this apparent conflict, the plaintiff argues that the commissioner's admission of the blood test results absent a determination of whether the operator suffered or allegedly suffered a physical injury "contravenes an essential premise of chemical testing under § 14-227a (k)." In other words, the plaintiff argues that because one of the conditions that must be met under § 14-227a (k) references diagnosis or treatment *of an injury*, and because the plaintiff did not suffer nor was alleged to have suffered a physical injury, the conditions for the admissibility of the blood test derived from his blood sample were not satisfied in accordance with the criminal statute, as required by § 14-227b (j) (5).

The plaintiff's interpretation of the relationship between the two statutes would lead to an unworkable result. See *Canton* v. *Cadle Properties of Connecticut, Inc.*, 188 Conn. App. 36, 47, 204 A.3d 62 (2019) (literal adherence to plain and unambiguous text of statute unworkable where such an interpretation of statute relieving tenants of obligation to pay utility expenses and placing burden on receiver appointed under General Statutes § 12-163a would "likely lead to considerably less money to satisfy the amount owed in unpaid property taxes and, where necessary, the fees and costs of the receiver, thereby defeating the primary purpose of the receivership"). An interpretation of the administrative statute as requiring that an operator suffer or allegedly suffer a physical injury on the basis of its reference to the criminal statute, when its language plainly and unambiguously dictates its application oth-

erwise, would eliminate any operative distinction in the application of either statute. In addition, such an interpretation would be inconsistent with this court's recognition that the legislative scheme of §§ 14-227a and 14-227b establishes distinct types of proceedings. *State* v. *Gracia*, 51 Conn. App. 4, 10, 719 A.2d 1196 (1998) ("We have previously recognized . . . that [t]he legislative scheme [of §§ 14-227a and 14-227b] establishes *two separate and distinct proceedings*. The administrative suspension of an operator's license is under the jurisdiction of the department of motor vehicles and the prosecution of the underlying offense of driving while intoxicated falls within the jurisdiction of the criminal justice system." [Emphasis added; internal quotation marks omitted.]).

Because we have determined that the plain and unambiguous language of §§ 14-227b (j) and 14-227a (k), when construed together, "yields an unworkable result, we may look for interpretive guidance to extratextual evidence, such as the legislative history . . . ." *Canton* v. *Cadle Properties of Connecticut, Inc.*, supra, 188 Conn. App. 47. In order to provide clarity on the relationship between the two statutes, we examine the legislative history behind the 2009 amendment to § 14-227b (j). See *Middlebury* v. *Dept. of Environmental Protection*, 283 Conn. 156, 174, 927 A.2d 793 (2007) ("[t]o determine whether the legislature enacted a statutory amendment with the intent to clarify existing legislation, we look to various factors, including, but not limited to (1) the amendatory language . . . (2) the declaration of intent, if any, contained in the public act . . . (3) the legislative history . . . and (4) the circumstances surrounding the enactment of the amendment, such as, whether it was enacted in direct response to a judicial decision that the legislature deemed incorrect . . . or passed to resolve a controversy engendered by statutory ambiguity . . . ." [citations omitted; internal quotation marks omitted]).

Number 09-187, § 63 of the 2009 Public Acts (P.A. 09-187) made several revisions to General Statutes (Rev. to 2009) § 14-227b, which included adding to then subsection (k) the additional precondition in which a police officer has otherwise determined that an operator of a motor vehicle requires treatment or observation at a hospital. In regard to this revision, the summary for P.A. 09-187 provides that the act "*expands the circumstances* under which blood test results from someone taken to a hospital can be used *under the administrative . . . process*." (Emphases added.) That summary further describes the act as expanding "the circumstances under which blood test results *can be used to include situations where the police officer determines that the person requires treatment or observation at a hospital, even if an injury is not apparent*." (Emphasis added.) This description confirms that the purpose of the 2009 amendment was to extend the factual circum-

stances in which blood test results derived from blood samples are admissible in administrative proceedings under § 14-227b (j) to include accident situations where an operator of a motor vehicle, regardless of a physical injury or alleged physical injury, is determined by a police officer to require treatment or observation at a hospital.

On the basis of the foregoing, we disagree with the plaintiff's proposed reading of § 14-227b (j) to require either that an operator suffer or be alleged to have suffered a physical injury before his blood can be taken at a hospital. Our adoption of that reading would be inconsistent with the purpose underlying the 2009 amendment to § 14-227b (j) and render that subsection, as amended, inoperative. See *Middlebury* v. *Dept. of Environmental Protection*, supra, 283 Conn. 173–74 ("An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act. . . . Because of the legislature's plenary authority to define the scope of administrative appeals . . . we have been especially deferential to statutory changes when the new statute may be characterized as clarifying the administrative law." [Citation omitted; internal quotation marks omitted.]). The 2009 amendment reinforces the notion that distinct factual preconditions were necessary for the application of §§ 14-227b (j) and 14-227a (k), respectively. Reading the amended subsection as simply reiterating the physical injury or alleged physical injury requirement would effectively make the new language added by the amendment meaningless and imparts no real distinction between the administrative statute and the criminal statute. "It is a cardinal maxim of statutory interpretation that statutes shall not be construed to render any sentence, clause, or phrase superfluous or meaningless." (Internal quotation marks omitted.) *Allen* v. *Commissioner of Revenue Services*, 324 Conn. 292, 309, 152 A.3d 488 (2016), cert. denied,      U.S.     , 137 S. Ct. 2217, 198 L. Ed. 2d 659 (2017).

Moreover, as previously discussed, construing § 14-227b (j) and 14-227a (k) as being applicable to distinct factual circumstances is consistent with our case law discussing the legislative scheme underlying both of those statutes. See *State* v. *Gracia*, supra, 51 Conn. App. 10. Although both subsections of those statutes relate to the same subject matter, they govern separate proceedings that have distinct purposes and burdens of proof. See *O'Rourke* v. *Commissioner of Motor Vehicles*, 33 Conn. App. 501, 508, 636 A.2d 409, cert. denied, 229 Conn. 909, 642 A.2d 1205 (1994); *State* v. *Barlow*, 30 Conn. App. 36, 41, 618 A.2d 579 (1993). Accordingly, we conclude that, in the context of an administrative proceeding, a physical injury or alleged physical injury is not necessary for the admission of blood test results derived from a blood sample taken when an operator of a motor vehicle, who was involved in an accident,

has otherwise been determined by a police officer to require treatment or observation at a hospital.[3]

In the present case, there is no dispute that the plaintiff was involved in an accident as a result of operating his motor vehicle while intoxicated. The record further reveals that the plaintiff began acting in an increasingly belligerent manner after the police officers and paramedics arrived to provide assistance. This included physically assaulting an officer and two paramedics, and causing damage to a police cruiser. Moreover, Officer Lair indicated in his police report that he was going to transport the plaintiff to the Southington Police Department for booking, but, because the plaintiff "appeared to be incapacitated with a blank look on his face," he was released from his handcuffs and put into the rear of the ambulance that transported him to the hospital. The plaintiff's unseemly conduct continued at the hospital, where he struck a male paramedic, attempted to bite a nurse technician, and repeatedly tried to bite off his handcuffs and bite into his IV line. Hospital records also indicate that the plaintiff was admitted due to "an altered mental status," that hospital staff continued to observe the plaintiff and update his medical status, and that a vaccine was administered to the plaintiff after his blood was drawn. In addition, "Officer Lair was informed by Dr. Richard Steinmark that [the] plaintiff's blood would be drawn by medical staff in the course of their normal medical duties." As such, the record demonstrates that, following an accident, the plaintiff was determined by Officer Lair to require either treatment or observation at the hospital in lieu of suffering or allegedly suffering a physical injury, pursuant to § 14-227b (j), and that the hospital staff, recognizing the plaintiff's erratic behavior, took the plaintiff's blood sample in order to diagnose or treat him in connection with that behavior pursuant to § 14-227a (k) (1).

Accordingly, we conclude that the trial court properly determined that the blood test derived from the plaintiff's blood sample satisfied the conditions for admissibility in the underlying administrative hearing before the department.[4]

II

The plaintiff next claims that permitting the introduction of blood test results absent satisfaction of the admissibility conditions set forth in § 14-227a (k) is unconstitutional. Specifically, the plaintiff urges this court to consider what he characterizes as the "serious constitutional implications" that may arise in cases involving uninjured drivers sent by police officers to hospitals for treatment or observation.

We need not address this claim because it was not raised by the plaintiff in the administrative hearing below. See *Adams* v. *Commissioner of Motor Vehicles*,

182 Conn. App. 165, 176, 189 A.3d 629 ("[a] plaintiff cannot raise issues on appeal that he failed to present to the hearing officer below"), cert. denied, 330 Conn. 940, 195 A.3d 1134 (2018). Moreover, this unpreserved claim does not warrant review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), because the alleged constitutional implications are purely speculative.[5] The plaintiff does not identify any particular constitutional violations that have arisen in this case. In the absence of a specific claim of constitutional deficiency, this claim is not reviewable under *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] In this opinion, our references to § 14-227b are to the 2015 revision of the statute, unless otherwise noted.

[2] Pursuant to Practice Book § 61-12, the plaintiff filed a motion requesting that the trial court impose a discretionary stay of the commissioner's decision during the pendency of this appeal. The trial court denied the motion, and the plaintiff sought review of that order. This court granted the plaintiff's subsequent motion for review of the stay order, but denied the relief requested therein. The plaintiff also filed a motion, pursuant to Practice Book § 61-14, requesting that this court order that the commissioner's decision be stayed, which this court subsequently denied. In the absence of an appellate stay, the plaintiff's forty-five day license suspension and six month ignition device installation requirement have expired. This appeal is not moot, however, because this court could afford the plaintiff practical relief from the adverse collateral consequences that are attendant to his license suspension. See *Stash* v. *Commissioner of Motor Vehicles*, 297 Conn. 204, 208 n.7, 999 A.2d 696 (2010) (noting that § 14-227b license suspensions have collateral consequences due to the increasing penalties imposed upon successive violations of that statute).

[3] This conclusion does not affect the application of the admissibility conditions set forth in § 14-227a (k) in determining whether to impose a license suspension in an administrative hearing. In this regard, we disagree with the trial court to the extent that its decision could be read as suggesting that § 14-227a (k) is not applicable to administrative proceedings. Rather, we recognize that § 14-227b (j) (5) necessitates that blood samples must be obtained in accordance with the admissibility conditions set forth in § 14-227a (k), and that blood test results may be admissible in administrative proceedings if they are derived from a blood sample taken from an operator of a motor vehicle who suffered or allegedly suffered a physical injury, *or in the absence of such an injury* was deemed by a police officer to require treatment or observation at a hospital.

[4] In this appeal, the plaintiff's only claim in regard to the interpretation of §§ 14-227b (j) and 14-227a (k) is that the blood test was inadmissible in the license suspension hearing because his blood sample was not obtained for the diagnosis or treatment of an injury. Because the plaintiff does not challenge the commissioner's determination as to the remaining issues that are considered in a hearing under § 14-227b (j) or the remaining conditions for admissibility under § 14-227a (k), we need not address them. See, e.g., *Morrissey-Manter* v. *Saint Francis Hospital & Medical Center*, 166 Conn. App. 510, 527, 142 A.3d 363 (claims not briefed or mentioned in any way on appeal deemed to be abandoned), cert. denied, 323 Conn. 924, 149 A.3d 982 (2016); *Deutsche Bank National Trust Co.* v. *Shivers*, 136 Conn. App. 291, 292 n.2, 44 A.3d 879 (court may decline to review claims not briefed on appeal and deemed abandoned) cert. denied, 307 Conn. 938, 56 A.3d 950 (2012).

[5] Under *Golding*, a party "can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived [the

respondent] of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate the harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in the original; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40, as modified by *In re Yasiel R.*, supra, 317 Conn. 781. "Because a [party] cannot prevail under *Golding* unless he meets each of those four conditions, an appellate court is free to reject a defendant's unpreserved claim upon determining that any one of those conditions has not been satisfied." *State* v. *Brunetti*, 279 Conn. 39, 54, 901 A.2d 1 (2006), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007).

———————————————