# BOARDWALK REALTY ASSOCIATES, LLC *v.* M & S GATEWAY ASSOCIATES, LLC, ET AL.
## (SC 20395)

Robinson, C. J., and McDonald, D'Auria,
Mullins, Kahn, Ecker and Keller, Js.

*Syllabus*

Pursuant to statute (§ 12-163a (a)), a municipality may request that the
Superior Court appoint a receiver of rents or use and occupancy pay-
ments for any property for which the owner is delinquent in the payment
of real property taxes, and the "receiver appointed by the court shall
collect all rents or payments for use and occupancy forthcoming from
the occupants of the [property] in question in place of the owner . . . ."

The plaintiff, which had been appointed, pursuant to § 12-163a (a), to serve
as the receiver of rents for certain real property owned by C Co., sought
to recover unpaid rent and use and occupancy fees from the defendants,
M Co. and V Co., which have operated an automobile dealership on that
property since 2001 without paying rent. C Co. leased the property to
M Co. for a three year term, and M Co. thereafter exercised its option
to renew the lease for another three year term, which expired in 2001.
V Co., which is owned by M Co., subleased the property from M Co.
pursuant to an agreement that incorporated the terms and rent obliga-
tions of the lease. Shortly before the lease expired, C Co. effectively
abandoned the property, which was allegedly contaminated and the
subject of an ongoing enforcement action by the Department of Environ-
mental Protection. The defendants thereafter continued to operate the
dealership on the property, but, since 2001, they have failed to pay rent
or to make use and occupancy payments to C Co., or to pay property
taxes to the town in which the property is located. The parties filed
separate motions for summary judgment. The defendants claimed that
a receiver of rents appointed under § 12-163a has no authority to seek
rent or use and occupancy payments with respect to an abandoned
property, whereas the plaintiff claimed that it was entitled to seek rent
and use and occupancy payments because, even though the lease with
C Co. had expired, the defendants remained in possession as tenants,

Boardwalk Realty Associates, LLC *v.* M & S Gateway Associates, LLC

either at will or at sufferance. The trial court denied the plaintiff's motion and granted the defendants' motion, concluding that C Co., by abandoning the property and failing to pursue any of its rights against the defendants, had allowed the defendants to occupy the property without a rental obligation and that there was no rent for the plaintiff receiver to collect. On the plaintiff's appeal, *held* that the trial court correctly concluded that § 12-163a did not authorize the plaintiff to collect rent or use and occupancy payments from the defendants, as the remedy provided by that statute does not extend to situations in which a tax delinquent property owner is absent and not pursuing such rent or payments from the occupant, and, accordingly, the trial court properly granted the defendants' motion for summary judgment: because the language in § 12-163 (a) was ambiguous as to whether a receiver is limited to collecting rent or use and occupancy payments that are the product of an existing landlord-tenant relationship or whether a receiver has the authority to establish those payments in the first instance, this court considered extratextual sources, including case law interpreting the statute, and concluded that, under the circumstances of the present case, the narrow authority conferred on the receiver by § 12-163a did not permit the plaintiff to establish rent or use and occupancy payments in the first instance; moreover, that conclusion was supported by the legislative history, which indicated that the statute was viewed as a remedy that would avert the abandonment of properties, rather than being intended to apply to abandoned property or to authorize receivers to impose rent or use and occupancy payments in the place of a property owner who has abandoned the property; furthermore, the legislature, as the governmental body primarily responsible for formulating public policy, was best situated to address the unusual circumstances presented in this case, in which the town in which C Co.'s property was located sought to recoup unpaid property taxes on an abandoned property utilized by an apparently successful commercial enterprise.

Argued November 23, 2020—officially released August 13, 2021*

*Procedural History*

Action to recover damages for, inter alia, unpaid rent, and for other relief, brought to the Superior Court in the judicial district of Hartford, Housing Session, where the court, *Miller, J.*, denied the plaintiff's motion for summary judgment as to liability, granted the defendants' motion for summary judgment and rendered

---

* August 13, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

340 Conn. 115 DECEMBER, 2021 117

Boardwalk Realty Associates, LLC *v.* M & S Gateway Associates, LLC

judgment for the defendants, from which the plaintiff appealed. *Affirmed.*

*Kenneth R. Slater, Jr.*, with whom was *Logan A. Carducci*, for the appellant (plaintiff).

*Eric H. Rothauser*, with whom were *Jay B. Weintraub* and, on the brief, *John L. Bonee III*, for the appellees (defendants).

*Opinion*

ROBINSON, C. J. This appeal is the most recent battle in the efforts of the town of Canton (town) to collect unpaid property taxes on a parcel of commercial real property (property) that was effectively abandoned in 2001 by its owner, Cadle Properties of Connecticut, Inc. (Cadle), and on which the defendants, M & S Gateway Associates, LLC (Gateway) and Mitchell Volkswagen, LLC (Mitchell),[1] have operated an automobile dealership since 1995. The plaintiff, Boardwalk Realty Associates, LLC, which is the court-appointed receiver of rents pursuant to General Statutes § 12-163a,[2]

---

[1] We refer to the defendants individually when appropriate for purposes of clarity.

[2] General Statutes § 12-163a (a) provides in relevant part: "Any municipality may petition the Superior Court or a judge thereof, for appointment of a receiver of the rents or payments for use and occupancy for any property for which the owner, agent, lessor or manager is delinquent in the payment of real property taxes. . . . The court shall make a determination of any amount due and owing and any amount so determined shall constitute a lien upon the real property of such owner. . . . *The receiver appointed by the court shall collect all rents or payments for use and occupancy forthcoming from the occupants of the building in question in place of the owner, agent, lessor or manager.* The receiver shall make payments from such rents or payments for use and occupancy, first for taxes due on and after the date of his appointment and then for electric, gas, telephone, water or heating oil supplied on and after such date. The owner, agent, lessor or manager shall be liable for such reasonable fees and costs determined by the court to be due the receiver, which fees and costs may be recovered from the rents or payments for use and occupancy under the control of the receiver, provided no such fees or costs shall be recovered until after payment for current taxes, electric, gas, telephone and water service and heating oil deliveries has been made. The owner, agent, lessor or manager shall be liable to the petitioner for reasonable attorney's fees and costs incurred by

Boardwalk Realty Associates, LLC *v.* M & S Gateway Associates, LLC

appeals[3] from the trial court's judgment, rendered in accordance with the court's granting of the defendants' motion for summary judgment with respect to the plaintiff's complaint seeking rent, as well as use and occupancy payments, from the defendants. On appeal, the plaintiff contends that the trial court incorrectly concluded that the plaintiff lacked authority under § 12-163a to impose and collect rent or use and occupancy payments in the place of Cadle, the tax delinquent owner that effectively abandoned the property in 2001. We conclude that a receiver appointed under § 12-163a is not statutorily authorized to impose and collect rent or use and occupancy payments under the circumstances of this case, when the property has been abandoned by the owner prior to the appointment of the receiver and there is no existing obligation for the receiver to enforce. Accordingly, we affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history, much of which is set forth in previous decisions of this court and the Appellate Court in prior appeals considering other aspects of this long running dispute. Cadle owns the property, which is located at 51 Albany Turnpike in Canton. In October, 1995, Cadle leased the property to Gateway for a three year term from November 1, 1995, through October 31, 1998, with Gateway having an option to renew for a second

the petitioner, provided no such fees or costs shall be recovered until after payment for current taxes, electric, gas, telephone and water service and heating oil deliveries has been made and after payments of reasonable fees and costs to the receiver. Any moneys remaining thereafter shall be used to pay the delinquent real property taxes and any money remaining thereafter shall be paid to such parties as the court may direct after notice to the parties with an interest in the rent or payment for use and occupancy of the property and after a hearing. The court may order an accounting to be made at such times as it determines to be just, reasonable and necessary.''

[3] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

Boardwalk Realty Associates, LLC *v.* M & S Gateway Associates, LLC

three year period. Gateway exercised its renewal rights, which extended the lease for a second three year term that terminated on October 31, 2001. In addition to rent payments, the lease required that Gateway pay the town all property taxes levied and assessed against the property during the lease term.[4]

In December, 1995, Mitchell, which is owned by Gateway, entered into a sublease agreement with Gateway for the rental of the property. That sublease incorporated the initial term, the renewal/second term, the rent structure, and the taxation obligations of the lease between Gateway and Cadle. Mitchell has operated an automobile dealership on the property since October, 1995, despite the expiration of the Gateway lease in 2001.

During the late 1990s, Cadle was subject to an enforcement action brought in the Superior Court by the Department of Environmental Protection (department) involving the property's contaminated soil and groundwater. On December 4, 2000, the Superior Court ordered Cadle to comply with the department's pollution abatement order and assessed a civil penalty of $2,143,000 against Cadle. See *Canton* v. *Cadle Properties of Connecticut, Inc.*, 188 Conn. App. 36, 40 n.4, 204 A.3d 62 (2019), citing *Holbrook* v. *Cadle Properties of Connecticut, Inc.*, Superior Court, judicial district of Hartford, Docket No. CV-97-0567429-S (December 4, 2000) (29 Conn. L. Rptr. 167). That order also prohibited Cadle "from conveying any interest in the . . . property . . . until all contaminated soil and . . . groundwater . . . ha[d] been fully remediated," and required Cadle to turn over to the state of Connecticut all rent payments (1) that had been received from Gateway and held in

---

[4] The parties acknowledged in the lease that "substantial delinquent taxes were due on the property" and that, although Gateway's current tax payments would be applied to delinquent taxes first, Gateway "was not in any way liable for delinquent taxes."

Boardwalk Realty Associates, LLC *v.* M & S Gateway Associates, LLC

escrow pursuant to a prejudgment remedy, and (2) forthcoming from Gateway for the remainder of the extended lease term. *Holbrook* v. *Cadle Properties of Connecticut, Inc.*, supra, 29 Conn. L. Rptr. 177. After the entry of that order, "Cadle took no further steps to manage the property" and, since the termination date of the lease on October 31, 2001, has not (1) demanded any payments from Gateway under the lease, (2) demanded or requested use or occupancy payments from Gateway or any other party, (3) advertised the property for a new tenancy, (4) commenced an eviction action against Gateway or any other party, or (5) paid for "any repairs, maintenance or improvements to the property." Mitchell continues to occupy the property and operate its automobile dealership to date; Gateway has not made any rent or use and occupancy payments to Cadle, or paid any real property taxes to the town on the property.[5]

"After Cadle effectively abandoned the property . . . the town . . . filed a petition [in April, 2011], seeking the appointment of a receiver of rents pursuant to § 12-163a. The petition alleged that Cadle had failed to pay real property taxes due to the town in the amount of $362,788.59, plus interest and lien penalties, for a total amount due of $884,263.04.[6] The petition further alleged that, during all relevant periods, the property was occupied by a Volkswagen dealership owned by [the defendants], which had a legal obligation to pay rent to Cadle. The court, having found that Cadle owed the town taxes

---

[5] Gateway and Mitchell have paid their own independent property tax obligations to the town since that time, along with utility payments in excess of $439,000.

[6] "The petition was filed on April 26, 2011. On May 12, 2017, the town filed a report with the trial court indicating that the amount of real estate taxes due and owing for the period from June 23, 2011, the date the receiver was appointed, to April 25, 2017, including interest and lien fees, was $208,731.43." *Canton* v. *Cadle Properties of Connecticut, Inc.*, supra, 188 Conn. App. 41 n.5.

Boardwalk Realty Associates, LLC *v.* M & S Gateway Associates, LLC

. . . granted the petition to appoint the [plaintiff as] receiver [in June, 2011], and issued orders authorizing the receiver to collect all rents or use and occupancy payments due with respect to the property.'' (Footnote in original; footnote omitted; internal quotation marks omitted.) *Canton* v. *Cadle Properties of Connecticut, Inc.*, supra, 188 Conn. App. 40–41.

Subsequently, the plaintiff served Gateway ''with a notice to quit possession of the property on the ground of nonpayment of rent, [and Gateway] filed a motion to intervene in the town's action against Cadle in order to challenge the [plaintiff's] authority to take legal action against it. Shortly thereafter, the [plaintiff] filed a motion to modify the receivership order to authorize it to pursue an eviction of [Gateway] in the event of nonpayment of rent, to lease the property to a new tenant, and to use all legal process to collect back rent. Prior to acting on [Gateway's] pending motion to intervene, the court granted the [plaintiff's] motion to modify without objection.

''Subsequently, the trial court granted [Gateway's] motion to intervene in the action. [Gateway] then filed a motion to remove the [plaintiff as] receiver, asserting, inter alia, that the [plaintiff] had exceeded its authority under § 12-163a by serving it with a notice to quit and by bringing an action to collect back taxes and prior rents. The court denied the motion for removal . . . .'' (Internal quotation marks omitted.) Id., 41. In a subsequent appeal, we upheld the denial of Gateway's motion to remove the plaintiff as receiver but concluded that the plaintiff's authority under § 12-163a was limited to the ''use [of] legal process to collect [past due] rent''; it did not have the authority to evict a tenant from the property or to lease the property to a new tenant.[7]

---

[7] In a subsequent appeal challenging the plaintiff's failure to pay utility bills for dates subsequent to its appointment, the Appellate Court rejected Gateway's argument that ''§ 12-163a (a) requires the receiver to pay the costs for utilities due on and after its appointment''; *Canton* v. *Cadle Properties*

Boardwalk Realty Associates, LLC *v.* M & S Gateway Associates, LLC

*Canton* v. *Cadle Properties of Connecticut, Inc.*, 316 Conn. 851, 853, 114 A.3d 1191 (2015).

In August, 2016, the plaintiff filed an amended complaint, seeking rent or use and occupancy payments[8] from the defendants in the amount of $1,349,648, plus attorney's fees. After the defendants answered the amended complaint by denying that they owed rent or use and occupancy payments to Cadle at any point since 2001,[9] the parties filed separate motions for summary

---

*of Connecticut, Inc.*, supra, 188 Conn. App. 43; concluding that, under "§ 12-163a, the receiver is mandated to pay only utility bills that are the obligation of the owner, not those incurred by tenants of the subject property." Id., 52.

[8] By way of background, we note that use and occupancy payments are the "reasonable rental value" of the property and are paid to a landlord by a tenant at sufferance who occupies the land in the absence of a lease agreement. *Sproviero* v. *J.M. Scott Associates, Inc.*, 108 Conn. App. 454, 463, 948 A.2d 379, cert. denied, 289 Conn. 906, 957 A.2d 873 (2008). They are most frequently associated with summary process proceedings to evict a tenant because, "after a notice to quit possession has been served, a tenant's fixed tenancy is converted into a tenancy at sufferance. . . . A tenant at sufferance is released from his obligations under a lease. . . . His only obligations are to pay the reasonable rental value of the property [that] he occupied in the form of use and occupancy payments . . . and to fulfill all statutory obligations." (Citations omitted; footnote omitted.) Id., 462–63. Although use and occupancy payments are provided by statute, they are also an obligation that is enforceable independently of a summary process action. See *A1Z7, LLC* v. *Dombek*, 188 Conn. App. 714, 716, 205 A.3d 740 (2019) (summary process was not exclusive remedy, and property owner could seek use and occupancy via unjust enrichment action); see also General Statutes § 47a-3c ("[i]n the absence of agreement, the tenant shall pay the fair rental value for the use and occupancy of the dwelling unit"); General Statutes § 47a-26b (providing for use and occupancy payments during pendency of summary process action).

[9] In their answer, the defendants alleged that, at no time since 2001 has Cadle, as the owner of the property, (1) managed, repaired or remediated the property, or (2) demanded rent or use and occupancy payments from the defendants. The defendants then raised numerous special defenses and a counterclaim that Gateway had suffered damages by making some limited rent and use and occupancy payments to the plaintiff under threat of eviction because the plaintiff (1) had exceeded its authority under § 12-163a by threatening them with eviction, and (2) had failed to follow the plain language of the statute in distributing some proceeds that it had collected to itself first and then to the town for the back taxes.

Boardwalk Realty Associates, LLC *v.* M & S Gateway Associates, LLC

judgment. The defendants contended that the plaintiff, as a receiver of rents appointed under § 12-163a, has no authority to seek rent or use and occupancy payments with respect to an abandoned property. The plaintiff argued that, to the contrary, despite the expiration of the lease with Cadle, the defendants remained in possession as "tenants" of the property, either at will or at sufferance, and the plaintiff was therefore entitled to seek use and occupancy payments.

The trial court granted the defendants' motion for summary judgment and denied the plaintiff's motion. The trial court agreed with the defendants' argument that our decision in *Canton* v. *Cadle Properties of Connecticut, Inc.*, supra, 316 Conn. 851, which held that a receiver of rents under § 12-163a was not authorized to evict a tenant based on nonpayment of rent, placed "very strict limits on what a receiver of rents appointed pursuant to that statute may do to collect rents." The trial court concluded that "Cadle's conduct in abandoning the property—thereby not pursuing any of its rights as against these defendants—inadvertently allowed these defendants to live on the property without payment. Under these unusual circumstances, there is no 'rent' for the receiver to collect." The trial court emphasized that the plaintiff was bound by "the consequences of Cadle's abandonment of the property in 2001," insofar as the defendants' lease with Cadle lacked "holdover provisions, which, after the lease expired, would (1) have defined the defendants' status on the property, and (2) have set forth the tenants' payment obligations while in this status." Accordingly, the trial court rendered judgment for the defendants as to the entire amended complaint. This appeal followed.

On appeal, the plaintiff contends that the trial court incorrectly concluded that § 12-163a does not permit a receiver of rents to collect rent or use and occupancy payments if the tax delinquent property owner is absent

Boardwalk Realty Associates, LLC *v.* M & S Gateway Associates, LLC

and not pursuing those payments from the occupant. The plaintiff relies on the plain language of § 12-163a providing that the receiver collects such payments "in place of the owner" as evincing "the legislature's clear intent to allow receivers to step into the shoes of an otherwise absent property owner and [to] collect rent and/or use and occupancy payments to recoup the owner's delinquent tax obligation." The plaintiff argues that a construction to the contrary—requiring the presence or participation of the owner—creates an "absurd or unworkable result" by "permit[ting] a delinquent tenant or occupant to frustrate a town's ability to recoup delinquent taxes" and by placing "the receiver . . . at the mercy of the property owner whose failure to diligently pay taxes is the basis for granting the receiver the power to collect in the first place." (Internal quotation marks omitted.) Citing the Appellate Court's recent decision in *A1Z7, LLC* v. *Dombek*, 188 Conn. App. 714, 205 A.3d 740 (2019), the plaintiff emphasizes that it stands in the shoes of Cadle, which, as the owner of the property, remains entitled to use and occupancy payments, even outside the scope of a summary process action, because Mitchell's occupancy constitutes a tenancy at sufferance. Finally, quoting *Canton* v. *Cadle Properties of Connecticut, Inc.*, supra, 316 Conn. 862, the plaintiff contends that the legislative history of § 12-163a supports its construction of the statute, in furtherance of the legislature's intent to " 'provide a less drastic, expensive and time-consuming mechanism than foreclosure to recover delinquent taxes, as it already had afforded to utility companies to collect delinquent utility payments' " via the enactment of General Statutes § 16-262f.[10]

_____

[10] General Statutes § 16-262f provides in relevant part: "(a) (1) Upon default of the owner, agent, lessor or manager of a residential dwelling who is billed directly by an electric distribution, gas or telephone company or by a municipal utility for electric or gas utility service furnished to such building, such company or municipal utility or electric supplier providing electric generation services may petition the Superior Court or a judge thereof, for

340 Conn. 115      DECEMBER, 2021           125

Boardwalk Realty Associates, LLC *v.* M & S Gateway Associates, LLC

In response, the defendants urge a strict construction of § 12-163a and contend that the trial court properly construed its plain language in holding that a receiver of rents appointed pursuant to that statute lacks the authority to establish rent or use and occupancy payments. In the event we deem § 12-163a ambiguous, the defendants also rely heavily on the legislative history of the statute, along with authority limiting rent receivers' authority under § 16-262f in unpaid utility cases; see, e.g., *Connecticut Light & Power Co.* v. *DaSilva*, 231 Conn. 441, 446, 650 A.2d 551 (1994); and contend that, under the statute, "the receiver is not the owner, and, in the absence of rent imposed by the owner, the receiver cannot establish rent or payments for a property that it does not own." The defendants further argue that the receiver's authority under § 12-163a to collect due and owing rent, as clarified in *Canton* v. *Cadle Properties of Connecticut, Inc.*, supra, 316 Conn. 859–60, is not implicated in the present case because Cadle, as the owner of the property, never established rent or use and occupancy payments, with the plaintiff lacking the authority to do so "retroactively for the last nineteen years."[11] Comparing § 12-163a with the expansive pow-

appointment of a receiver of the rents or payments for use and occupancy or common expenses, as defined in section 47-202, for any dwelling for which the owner, agent, lessor or manager is in default. . . .

\* \* \*

"(3) The receiver appointed by the court shall collect all rents or payments for use and occupancy or common expenses forthcoming from or paid on behalf of the occupants or residents of the building or facility in question in place of the owner, agent, lessor, manager or administrator. . . . "

[11] To this end, the defendants argue that, as a factual matter, there simply is no established landlord-tenant relationship between the defendants and Cadle after 2001 for which the plaintiff can assert rights to collect use and occupancy payments, given that "Cadle has not undertaken any responsibilities of landlord [or] made any effort to establish such a relationship with any of the defendants since 2001," insofar as it "clearly and undisputedly abandoned the property," including by not making any "efforts at remediating the environmental contamination" or paying its property taxes to the town. The defendants contend that mere occupation is not sufficient to establish a tenancy for which a receiver can charge rent.

Boardwalk Realty Associates, LLC *v.* M & S Gateway Associates, LLC

ers provided by the recently enacted blight receivership statute, General Statutes § 8-169aa,[12] the defendants posit that § 12-163a is simply inapplicable to "the situation of a landlord that has abandoned property and has chosen not to charge for use and occupancy," with the plaintiff, as receiver, "lack[ing] standing to assert Cadle's potential right of action that has never been brought by the owner, much less adjudicated." We agree with the defendants and conclude that § 12-163a does not authorize the plaintiff to collect use and occupancy payments under the circumstances of this case.

"The scope of a receiver's authority under § 12-163a is a question of statutory construction subject to plenary review and well established principles." *Canton* v. *Cadle Properties of Connecticut, Inc.*, supra, 316 Conn. 856. It is well settled that we follow the plain meaning rule pursuant to General Statutes § 1-2z in construing statutes "to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Sena* v. *American Medical Response of Connecticut, Inc.*, 333 Conn. 30, 45, 213 A.3d 1110 (2019); see id., 45–46 (stating plain meaning rule). In construing § 12-163a, "we do not write on a clean slate, but are bound by our previous judicial interpretations of this language and the purpose of the statute." (Internal quotation marks omitted.) *Commissioner of Public Safety* v. *Freedom of Information Commission*, 312 Conn. 513, 527, 93 A.3d 1142 (2014); see, e.g., *Callaghan* v. *Car Parts International, LLC*, 329 Conn. 564, 571, 188 A.3d 691 (2018) ("because we have previously construed [General Statutes] § 31-293 (a), we must consider its meaning in light of our prior cases interpreting the statute").

We begin with the text of § 12-163a, subsection (a) of which "sets forth the circumstances under which a municipality may seek the appointment of a receiver

[12] See footnote 17 of this opinion for the relevant text of § 8-169aa.

Boardwalk Realty Associates, LLC *v.* M & S Gateway Associates, LLC

of rents and the authority vested in the receiver upon such appointment.'' *Canton* v. *Cadle Properties of Connecticut, Inc.*, supra, 316 Conn. 856. Section 12-163a (a) provides in relevant part: ''Any municipality may petition the Superior Court or a judge thereof, for *appointment of a receiver of the rents or payments for use and occupancy* for any property for which the owner, agent, lessor or manager is delinquent in the payment of real property taxes. . . . *The receiver appointed by the court shall collect all rents or payments for use and occupancy forthcoming from the occupants of the building in question in place of the owner, agent, lessor or manager.* . . .'' (Emphasis added.) Both parties' readings of § 12-163a (a) in context are reasonable, rendering it ambiguous. See, e.g., *Sena* v. *American Medical Response of Connecticut, Inc.*, supra, 333 Conn. 47–48. The statute authorizes the collection of ''all'' rents or use and occupancy payments ''in place of the *owner, agent, lessor or manager*'' but is silent as to whether the receiver may establish those use and occupancy payments in the first instance, or whether such payments are limited to those that are the product of an existing landlord-tenant relationship.[13] The broader construction urged by the plaintiff is reasonable given the expansive word ''all,'' whereas the defendants' construction, relying on the words ''owner, agent, lessor, or manager'' to suggest inapplicability for abandoned properties, is similarly reasonable. This is particularly so, insofar as the word ''forthcoming'' suggests an existing obligation as between the property

[13] We acknowledge the plaintiff's reliance on the Appellate Court's recent decision in *A1Z7, LLC* v. *Dombek*, supra, 188 Conn. App. 714, for the proposition that Cadle, as the owner of the land, remains entitled to use and occupancy payments, even outside the scope of a summary process action, because Mitchell's occupancy constitutes a tenancy at sufferance. See footnote 9 of this opinion. This argument does not, however, squarely speak to the scope of the receiver's authority to seek use and occupancy payments when the owner has abandoned the property.

Boardwalk Realty Associates, LLC *v.* M & S Gateway Associates, LLC

owner and the tenants. See *Canton* v. *Cadle Properties of Connecticut, Inc.*, supra, 857–62 (deeming § 12-163a ambiguous with respect to whether it authorizes receiver to collect back rents or evict tenants for nonpayment of rent). Thus, we turn to the legislative history and other extratextual sources to aid our construction of § 12-163a.

As we move beyond the text of § 12-163a, we next turn to our interpretation of that statute in *Canton* v. *Cadle Properties of Connecticut, Inc.*, supra, 316 Conn. 851, in which we considered two issues under the statute, namely, (1) whether a "receiver may . . . collect back rent due," as well as "rent that is due after the receiver's appointment"; id., 857; and (2) whether the statute "confers additional authority on the receiver to evict a defaulting tenant and to lease the premises to a new tenant." Id., 860. Beginning with the scope of the receiver's authority as to back rent, we deemed the statute ambiguous on this point, observing that, although it authorized the collection of "all rents," it also used the word "forthcoming," which suggested future rents. See id., 857. Nevertheless, we concluded that "the more logical and compelling construction is the broader reading of the statute" because "[t]he words 'all' and 'rents' (plural), individually and collectively, support the broadest possible reading" insofar as the word " '[a]ll' does not modify 'occupants.' Therefore, we [could not] reasonably construe it to mean the collection of rent from every occupant. Rather, the term all rents suggests multiple kinds or sources (type or temporal) of rent. The fact that the receiver is to collect all rents 'in place of the owner,' who undoubtedly would be entitled to collect past and presently due rent, lends further support to the broader construction." Id., 857–58. We also relied on legislative history, specifically, the fact that "the sponsor of the bill enacted as § 12-163a referred to the bill as applying to back rent." Id.,

340 Conn. 115 DECEMBER, 2021 129

Boardwalk Realty Associates, LLC *v.* M & S Gateway Associates, LLC

859, citing Conn. Joint Standing Committee Hearings, Planning and Development, Pt. 1, 1995 Sess., p. 50, remarks of Representative Robert D. Godfrey; see also Public Acts 1995, No. 95-353, § 1. "Finally, we observe[d] that § 12-163a (a) authorizes the receiver to collect rents 'in place of the owner,' without indicating or limiting the means by which the receiver may do so. As such, it seems reasonable to infer that the statute authorizes the receiver to use the legal means that otherwise would have been available to the owner to collect such unpaid obligations." *Canton* v. *Cadle Properties of Connecticut, Inc.*, supra, 859; see id., 859–60 (harmonizing order of priority of payment set forth in § 12-163a with receiver's authority to collect back rent).

We next considered "whether § 12-163a confers additional authority on the receiver to evict a defaulting tenant and to lease the premises to a new tenant." Id., 860. In concluding that § 12-163a did not confer that authority, we observed that a "review of the statute reveals that the only authority expressly conferred on the receiver is to undertake the following actions: (1) collect funds; and (2) make payments. There is no authority to evict a tenant or to enter into a new lease. Although § 12-163a (a) authorizes the receiver to collect use and occupancy payments, which arise after a notice to quit has been served on a tenant . . . the statute does not authorize the receiver to cause such a notice to be served (or reference chapter 830 of the General Statutes addressing landlord remedies), to take possession of the property, or to undertake any other action in the owner's stead with respect to the property except collecting payment from the building's occupants." (Citation omitted; footnote omitted.) Id., 860–61. We further observed that "the authority conferred under § 12-163a is quite narrow in comparison to some other receivership statutes."[14] Id., 861; see *Connecticut Light*

---

[14] As a practical matter, we observed that, "because there is no indication in § 12-163a that the legislature has conferred the extraordinary authority

Boardwalk Realty Associates, LLC *v.* M & S Gateway Associates, LLC

*& Power Co.* v. *DaSilva*, supra, 231 Conn. 446 (noting, with respect to § 16-262f, on which § 12-163a is modeled, that "wide-ranging equitable and discretionary principles that govern rent receiverships in ordinary mortgage foreclosure proceedings" do not apply); see also footnote 14 of this opinion. Finally, we determined that the legislative history did not support an interpretation of § 12-163a authorizing the receiver to evict a defaulting tenant, observing that "history makes clear that the legislature intended to provide a less drastic, expensive and time-consuming mechanism than foreclosure to recover delinquent taxes, as it already had afforded to utility companies to collect delinquent utility payments. See Conn. Joint Standing Committee Hearings, supra, pp. 50–51, 53, remarks of Representative Godfrey; id., pp. 124–26, remarks of Eric Gottschalk, corporation counsel for the city of Danbury. The only authority referenced in that history vis-à-vis the property is the collection of rent. See id., pp. 50–51, 124–26." *Canton* v. *Cadle Properties of Connecticut, Inc.*, supra, 316 Conn. 862.

Most significant, we relied on our conclusion "that the receiver is authorized to use legal process to collect

on the receiver to enter into a contract with a new tenant that would bind the owner of the property, it would make no sense to construe the reference to use and occupancy payments as implicitly authorizing the receiver to evict the tenant. It is only when both actions may be taken that the receiver would be able to collect payments. That authority must rest with the owner, who has every incentive in the usual case to evict and replace a defaulting tenant in order to remedy the deficiency and regain access to the rental income. *Therefore, the authority to collect use and occupancy payments, reasonably construed, simply ensures that, if a lease has expired or an owner has served a notice to quit on a tenant, either before or after the receiver's appointment, the receiver may collect payments for use and occupancy, just as it may collect rent payments.* Thus, the text of the statute weighs heavily against a construction permitting a receiver appointed under § 12-163a to evict a defaulting tenant and to lease the premises to a new tenant." (Emphasis added; footnote omitted.) *Canton* v. *Cadle Properties of Connecticut, Inc.*, supra, 316 Conn. 861–62.

Boardwalk Realty Associates, LLC *v.* M & S Gateway Associates, LLC

past due rent'' in rejecting ''the town's contention that, in the absence of authority to replace a defaulting tenant with one that will provide a consistent revenue stream to discharge the tax obligations, § 12-163a would be a toothless lion, able to roar, but not bite.'' (Internal quotation marks omitted.) Id., 862–63. We believed that this argument ''erroneously assumes that the *property owner* generally lacks an incentive to regain the income produced from its rental property. *It is doubtful that the legislature had in mind the unusual circumstances of abandoned rental property at issue in this case.* To the extent that the town believes that greater authority is essential to vindicating its interests, especially in cases like the present one, in which the owner has abandoned the property and purported environmental contamination makes foreclosure of the property an impractical alternative . . . its recourse lies with the legislature.'' (Citations omitted; emphasis added.) Id., 863. It is evident then, that our decision in *Canton* v. *Cadle Properties of Connecticut, Inc.*, supra, 316 Conn. 851, which relies on the presence and participation of the property owner to establish that the receiver's right to collect back rent is meaningful—despite the lack of an eviction remedy—strongly supports a conclusion that the receiver appointed under § 12-163a cannot establish use and occupancy payments in the first instance with respect to a property that has been abandoned.

Indeed, the legislative history of § 12-163a, beyond that discussed in *Canton* v. *Cadle Properties of Connecticut, Inc.*, supra, 316 Conn. 851, provides even more compelling evidence that the legislature did not envision the statute applying to abandoned property; instead, it was viewed as a remedy that would avert the abandonment of properties. The proceedings before the Planning and Development Committee are illuminating, given that it ''is well established that testimony before

Boardwalk Realty Associates, LLC *v.* M & S Gateway Associates, LLC

legislative committees may be considered in determining the particular problem or issue that the legislature sought to address by legislation.'' (Internal quotation marks omitted.) *Republican Party of Connecticut* v. *Merrill*, 307 Conn. 470, 498, 55 A.3d 251 (2012). In an exchange with Representative Lawrence G. Miller about ''any negative tax'' that would be created should the property owner ''[decide] to take a walk'' subsequent to the appointment of the receiver, Representative Godfrey, the sponsor of the bill, specifically stated that he did not ''foresee a landlord taking a walk.'' Conn. Joint Standing Committee Hearings, supra, p. 52; see *Connecticut Assn. of Not-for-Profit Providers for the Aging* v. *Dept. of Social Services*, 244 Conn. 378, 395 n.22, 709 A.2d 1116 (1998) (''[w]e pay particular attention to statements of the legislators who sponsored the bill'' (internal quotation marks omitted)). Responding to a question from Representative Marie L. Kirkley-Bey about whether the statutory receivership process would increase the abandonment of buildings in cities, Representative Godfrey stated that the statutory receivership proceeding would help avert the abandonment of buildings because ''currently the only tool that a municipality has to go after back taxes is to foreclose on the property, which can be much more expensive for all parties involved and literally takes the property away from the landlord. This is something in between. It's a lesser step. It's a finer tool that gives the municipalities the ability to step in and take over the rent, to take over the property in lieu of taking the property and taking the ownership.''[15] Conn. Joint Standing Committee Hearings, supra, p. 51.

---

[15] Another question illuminating the limited role of the receiver and the anticipated presence of the property owner came from Representative Janet K. Lockton, who asked: ''If you're collecting the rent instead of the owner, say something goes wrong in the building and you, for all intents and purposes, would be the owner—would you be the owner responsible for a broken pipe if you were collecting the rent?'' Conn. Joint Standing Committee Hearings, supra, p. 125. Responding to that question, Attorney Gottschalk, corporation counsel for Danbury, stated that the ''statute provides that the

Boardwalk Realty Associates, LLC *v.* M & S Gateway Associates, LLC

Similarly, in responding to a question from Representative Janet K. Lockton, Attorney Gottschalk stated that he did not believe that the statutory receivership process would increase the abandonment of buildings because it is "a mechanism that you would use earlier in the process than you would use a foreclosure where you're divesting the property owner, when things haven't gotten so out of hand that there really is no solution short of taking that property. These are cases where something could be done to fix the problem. And if we pick them up earlier than we're picking them up now with foreclosures after eight and ten years of delinquency, then perhaps we can begin to turn this around. If all you have in your quiver are foreclosures and [nonjudicial] tax sales, then you're beyond the point where you're worried about '[w]hat's going to happen to those poor people . . . [w]hat's going to happen to the properties?' " Id., p. 127; see id., pp. 52–53, remarks of Representative Godfrey (suggesting that abandonment by landlord would not "muddy the waters in any way" because receivership served as "a conventional weapon instead of a [thermonuclear] device" by averting need for tax foreclosure proceedings that could lead to abandonment). This legislative history strongly suggests, then, that the legislature did not intend for § 12-163a to apply to abandoned property or to autho-

---

receiver is responsible only for collection of the rent and payment of the bills in accordance with a ranking. The other responsibilities that are attendant to home ownership remain with the landlord." Id. Acknowledging that landlords generally rely on the rent to fund the maintenance of the property and to pay for utilities, Attorney Gottschalk emphasized that "one of the most effective elements of this program is that by virtue of its surety and its certainty and its speed a landlord doesn't indulge in the process of waiting to see whether something else will happen. A landlord comes in and makes an arrangement and pays the delinquency pursuant to some kind of schedule. That is usually the way it happens. And we attempt to work with every property owner that has a delinquency." Id., p. 126. He emphasized that, "if a court order is established appointing a receiver, the receiver will collect the rents and the property owner will be left to deal with all the other issues attendant to home ownership or property ownership." Id.

Boardwalk Realty Associates, LLC *v.* M & S Gateway Associates, LLC

rize receivers appointed pursuant to that statute to impose rent or use and occupancy payments in the place of a property owner who has abandoned the property.

Finally, as we stated in *Canton* v. *Cadle Properties of Connecticut, Inc.*, supra, 316 Conn. 858–59, the legislature is able to give receivers broader powers when it desires to do so. In addition to the statutes discussed in that case,[16] the legislature recently enacted § 8-169aa,[17]

---

[16] "General Statutes § 42-110f (receiver shall have power to take property into his possession and to sell, convey and assign same); General Statutes § 52-505 (receiver shall be vested with property to manage and use for benefit and support of members of certain associations, communities or corporations); General Statutes § 52-509 (receiver to hold business and all property, real and personal, belonging to partnership) . . . ." (Citation omitted; footnote omitted.) *Canton* v. *Cadle Properties of Connecticut, Inc.*, supra, 316 Conn. 861.

[17] General Statutes § 8-169aa provides in relevant part: "(b) (1) In any municipality with a population of thirty-five thousand or more, a party in interest may file a petition for the appointment of a receiver to take possession and undertake rehabilitation of a building within such municipality, which petition shall be filed in the superior court for the judicial district in which such building is located. The proceeding on the petition shall constitute an action in rem.

\* \* \*

"(d) (1) A receiver appointed pursuant to this section shall have all powers necessary and appropriate, as approved by the court, for the efficient operation, management and improvement of the abandoned property in order to bring the same into compliance with municipal code requirements and fulfill all duties described in this subsection. *Subject to approval of the court, the powers and duties shall include, but not be limited to*:

"(A) *Taking possession and control of the abandoned property and any personal property of the owner used with respect to the abandoned property*;

"(B) Collecting outstanding accounts receivable;

"(C) *Pursuing all claims or causes of action of the owner with respect to the property described in subparagraph (A) of this subdivision*;

"(D) Contracting for the repair and maintenance of the abandoned property, provided the receiver shall make a reasonable effort to solicit three bids for any contract valued at more than twenty-five thousand dollars unless the contractor or developer provides or obtains financing for the receivership, and each of which contract shall be appropriately documented and included in the reports and accounting required to be submitted or filed by the receiver pursuant to this section;

\* \* \*

"(H) Entering into a rental contract or lease for a period of time not to exceed twelve months, provided the court shall approve any such contract or lease;

340 Conn. 115    DECEMBER, 2021    135

Boardwalk Realty Associates, LLC *v.* M & S Gateway Associates, LLC

which allows for the appointment of receivers to manage and undertake the rehabilitation of abandoned buildings in an attempt to combat urban blight—the propagation of which was a concern expressly raised by legislators during hearings on the bill that was enacted as § 12-163a. Unlike § 12-163a, though, § 8-169aa expressly gives receivers appointed pursuant thereto a vast array of powers, including "[t]aking possession and control of the abandoned property" and "[p]ursuing all claims or causes of action of the owner with respect to the" abandoned property. General Statutes § 8-169aa (d) (1) (A) and (C). That statute specifically envisions abandoned real property, like the land at issue in this case, insofar as it provides for receivership

* * *

"(N) Exercising any right a property owner would have to improve, maintain and otherwise manage such property, including to the extent necessary to carry out the purposes of this section.

* * *

"(e) (1) The receiver appointed pursuant to subdivision (2) of subsection (c) of this section shall be deemed to have powers and authority equivalent to ownership and legal control of the abandoned property for the purposes of filing plans with any public agency or board, seeking or obtaining construction permits or other approvals and submitting applications for financing or other assistance to public or private entities.

"(2) Notwithstanding the provisions of subdivision (1) of this subsection, nothing in this section shall be construed to relieve the owner of a building that has been determined to be an abandoned property pursuant to subdivision (2) of subsection (c) of this section of any civil or criminal liability or of any obligation to pay any tax, municipal lien or charge, mortgage, private lien or other fee or charge incurred before or after the appointment of the receiver, and no such liability shall transfer to the receiver.

"(3) *Notwithstanding any provision of the general statutes*, *the receiver shall not be liable for any environmental damage to a building* that has been determined to be an abandoned property pursuant to subdivision (2) of subsection (c) of this section, which environmental damage existed prior to such determination and the appointment of such receiver. The owner of the building shall be held liable for the environmental damage. . . ." (Emphasis added.) See also General Statutes § 8-169aa (a) (13) (defining "receiver" as "any person or entity that takes possession of a building pursuant to the provisions of this section for the purpose of rehabilitating such building or otherwise disposing of such building"); General Statutes § 8-169aa (c) (2) (establishing elements for proof of blight and abandonment).

without saddling the receiver with the owner's obligation to remediate any environmental contamination. See General Statutes § 8-169aa (e) (3). Section 8-169aa demonstrates, therefore, that the legislature, as the governmental body with primary responsibility for formulating public policy, is capable of addressing the situation presented by the present case. See, e.g., *Shannon* v. *Commissioner of Housing*, 322 Conn. 191, 200 n.14, 140 A.3d 903 (2016); *Commissioner of Public Safety* v. *Freedom of Information Commission*, supra, 312 Conn. 550–51 and n.35. Although the town's desire to use a receiver of rents to recoup unpaid property taxes from an apparently successful commercial property is certainly understandable, the narrow remedy provided by § 12-163a simply does not extend to the situation presented in this case. As we stated previously, "[t]o the extent that the town believes that greater authority is essential to vindicating its interests, especially in cases like the present one, in which the owner has abandoned the property and purported environmental contamination makes foreclosure of the property an impractical alternative . . . its recourse lies with the legislature." (Citations omitted.) *Canton* v. *Cadle Properties of Connecticut, Inc.*, supra, 863. The trial court, therefore, properly granted the defendants' motion for summary judgment.

The judgment is affirmed.

In this opinion the other justices concurred.

———————————————